## Willoughby v. Justice, et al.

(Decided March 11, 1924.)

### Appeal from Allen Circuit Court.

1. Records—Evidence Held to Preponderate in Favor of Defendants on Question of Record Title.—In an action involving title to land, public records having been destroyed by fire. evidence as to paper title held to preponderate in favor of defendants, so that a judgment by chancellor in defendant's favor will be sustained.

2. Appeal and Error—Finding of Chancellor on Conflicting Evidence Entitled to Some Weight.—Where the evidence was conflicting and chancellor was presumably acquainted with the parties, his opinion as to the facts is entitled to some weight on appeal.

GILLIAM & GILLIAM for appellant.

OLIVER & DIXON for appellees.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Affirming.

Mrs. Puss Justice died prior to the year 1908, survived by her husband, J. T. Justice and their two children, Leander and W. L. Justice, and also three children by a former husband. Shortly thereafter the three older children joined in a conveyance of their three-fifths undivided interest to the tract of land in controversy to R. M. Willoughby, and he arranged with J. T. Justice and later with the committee of J. T. Justice, who had become incompetent for a division of the rents arising from said lands, and after the death of J. T. Justice brought suit claiming a three-fifths interest, and also describing the land as containing eighty acres, and asked a sale and division of the proceeds between him and Leander and W. L. Justice. The defendants answered setting up two boundaries and asserting title in themselves through their father in one of the tracts containing fifty acres, admitting that the other tract containing thirty acres had been owned jointly by their father and mother, and that thereby the plaintiff was entitled to a three-fifths interest only in their mother's one-half of the thirty acres, and asking for a sale and division on this basis.

The issues were completed by appropriate pleadings and considerable evidence taken. The chancellor found for the defendants and the plaintiff appeals.

The courthouse at Scottville was burned in the year 1902, and the public records destroyed and an effort is made to prove paper title to the land in controversy by parol.

The witnesses are for the most part members of the family, including Mrs. Puss Justice's three children, her son-in-law and grandchild. Two of her children, who were aged eight and twelve years at the time of the events of which they testify, claim to have seen a deed to a sixty-five acre tract of land; that it was conveyed by J. C. Willoughby to Mrs. Puss Justice. The son, who was eleven or twelve years of age at the time of purchase, states that some three or four years afterward he came with his mother to Scottsville and had the deed recorded. He also tells in some detail as to the transaction at the time he says the deed was executed.

A granddaughter testifies as to having seen and read the deed and describes its contents. In addition these witnesses, and a number of others testify, they always understood and heard that Mrs. Puss Justice inherited $960.00 from her father and paid it on this tract of land; that she claimed and controlled it as long as she lived and that her husband admitted her ownership thereof; that this tract of land was in addition to a thirty-acre tract jointly owned by her and her husband, to which a deed was produced.

The competency of the witnesses does not seem to have been questioned. On the other hand J. C. ("Hawk") Willoughby, brother of Mrs. Puss Justice and vendor of the land in question, testifies positively that he did not convey the land to his sister, Puss Justice, nor did she pay him any of the consideration, nor did he ever know of his sister inheriting any money from her father. He says that he sold and conveyed the land to Tom Justice and John Willoughby about the year 187—; that his brother John, sold his interest to Bud Justice and that Bud and Tom Justice paid witness therefor; that there were about seventy acres of the land, and that J. T. Justice and his wife, witness' sister, thereafter made their home on it during their lives.

R. B. Justice, son of Bud Justice testifies that he knew of the tract of land purchased by his father and uncle Tom from "Hawk" Willoughby; that they sold a portion to one Cooksey, and that his father deeded the remainder to Tom Justice. He produces a paper purporting

to be a deed but the writing on which is so indistinct and faded that it cannot be read, except the endorsement on the cover which is a memorandum reciting an acknowledgment by J. A. Justice and Lucinda Justice to Thomas Justice on the 9th and 11th days of February, 1871, signed by the county clerk of Allen county and a further memorandum "Recorded in deed book —, page 310." There are fifty acres in the tract in controversy and the witness states that it is the only land that he ever knew of his father owning an interest in, which he conveyed to his uncle J. T. Justice.

Other evidence more or less corroborative was introduced on each side including claims as to the payment of taxes, but without reciting it in detail it preponderates in favor of appellees. It may be that Mrs. Puss Justice inherited the money claimed and paid it as a consideration on the land, but we are satisfied from the evidence that it was deeded to her husband. However a constructive trust is not claimed, and even if such trust was claimed there is no evidence of any fraud or that she did not consent for the deed to be taken in J. T. Justice's name. At any rate the most that can be said in favor of appellant is that the evidence is conflicting and as the chancellor was presumably acquainted with the parties, under such circumstances his opinion is entitled to some weight, and in it we concur.

Wherefore judgment is affirmed.